**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Richard LaDuca,

        Plaintiff,

    v.

Norfolk Southern Railroad,

        Defendant.

Case No. 1:05cv76

Judge Michael R. Barrett

**OPINION AND ORDER**

    This matter came before the Court upon the filing of Defendant's Motion for Summary Judgment (Doc. 32) with exhibits attached as Doc. 33, 34, 35, and 36. Plaintiff filed a memorandum in opposition to the motion (Doc. 40). Defendant filed a reply brief in further support of its motion (Doc. 41). This matter is now ripe for review. Plaintiff's Complaint alleges violations of the Family Medical Leave Act (FMLA), Americans with Disability Act (ADA) and Ohio Revised Code Chapter 4112. However, Plaintiff, by way of a footnote in this Memorandum in opposition (Doc. 40, FN6) is not disputing Defendant's motion as to the ADA claim and Ohio Revised Code Chapter 4112. Therefore, the only claim remaining is Plaintiff's claim that Defendant violated the FMLA.

    **A.**    **RELEVANT FACTS**

    Plaintiff, a Batavia resident, was employed by Defendant from 1999 until August, 2003, most recently as a yard conductor (LaDuca Depo., p48-49). Plaintiff was relatively high on the conductor seniority roster (Id.) which provided him with the ability

to have stable hours and required little travel (Talley Aff. ¶4).  Defendant requires that

its conductors eventually become engineers and to further that end, Defendant

negotiated a provision in the applicable collective bargaining agreement whereby it can

compel its employees to accept promotions into its LET (Locomotive Engineer Training)

program.  According to Defendant, one draw back of this program is that the seniority at

the company is based upon time of service at a particular position not the length of time

at the company.  So a conductor high on the conductor seniority roster would be at the

bottom of the engineer seniority roster upon completion of the LET program (Talley Aff.

¶8-9).  This change in seniority will have an adverse impact on an employee's ability to

determine job assignments and hours of work (Id.).  If an employee fails to successfully

complete the program or refuses to attend LET, he will be forfeiting his employment

(Id.).  On January 14, 2003 Plaintiff was informed that he would have to attend LET in

McDonough, Georgia and have a physical examination (Talley Aff. ¶5, 8).

On January 22, 2003, on his way to work, Plaintiff was involved in an automobile

accident that caused him to seek medical attention for back pain (LaDuca Depo., p 48-

49).  He was treated and released that same day with a prescription for pain medication

(Id. at 105-106).  On Friday, January 24, 2003 Plaintiff attended a previously scheduled

physical examination to confirm his fitness for LET with Dr. Chuck Le in Cincinnati at the

Bethesda Care Eastgate (Id. at 98-100).  Plaintiff indicated at this appointment that he

had not nor currently was suffering from a back injury or pain (Id. Exh. 19).  Dr. Le found

Plaintiff fit for duty with no restrictions (Id. at 102-103).  Plaintiff did not return to work

until the Monday following his accident, January 27, 2003 (Id., p 110-112).  Despite,

Plaintiff's attendance at this physical examination, Plaintiff claims to have been unable

2

to work and unable to perform his regular daily activities, including vacuuming, from Wednesday, January 22 through at least Saturday January 25 (LaDuca Aff. ¶7-8).

At some point in late January or early February, Plaintiff saw his primary care physician, Dr. Walker, on two occasions as result of the accident. Dr. Walker referred Plaintiff to a chiropractor, Dr. Teece, who treated him three times. Dr. Teece then referred Plaintiff to Dr. Nayak, an orthopedic doctor. Plaintiff also saw Dr. Kramer to evaluate Plaintiff's need for surgery. Dr. Kramer concluded that Plaintiff was not a good candidate for surgery at that time. Plaintiff then returned to Dr. Nayak who he saw on February 26, March 24 and June 23, 2003. Dr. Nayak recommended physical therapy and then aquatic physical therapy. (Id. at p 120-124).

At Plaintiff's request to receive physical therapy for his back pain, Defendant excused Plaintiff from the February LET (Arrington Aff. ¶8). Plaintiff requested intermittent FMLA on February 13, 2003 (Strickland Depo. Ex. 12). This request was denied as Plaintiff had not worked the required hours in the prior 12 months to qualify for FMLA leave (Strickland Depo. Ex. 11 and p 52). Plaintiff then continued to perform his normal job duties without restriction through July, 2003 (LaDuca Depo. p 113-114, 121, 124-125).

On May 22, 2003, Plaintiff again requested intermittent FMLA leave believing that he had met the required number of hours to qualify (Strickland Depo. Ex. 16). Plaintiff received a medical certification form on June 2, 2003 which needed to be completed by Plaintiff's doctor and returned to Defendant before this FMLA leave could be approved (Id. and LaDuca Depo. p 134). On June 23, 2003 Plaintiff had an appointment with Dr. Nayak, his treating physician, to have the medical certification completed (LaDuca

Depo. p 134-135).  At that time Dr. Nayak wrote Plaintiff a prescription for aquatic physical therapy.  However, this prescription did not specify when the physical therapy needed to be completed (LaDuca Depo. Ex. 29).  Apparently unbeknownst to Plaintiff, his May FMLA request was also denied because Plaintiff had still not work the requisite number of hours (Strickland Depo. Ex. 1-3, Doc. 32, p15 n6).

On July 2, 2003, Plaintiff received an email from Defendant informing him that he would be expected to be at the LET program beginning August 4th (Id. p 30).  On July 23, 2003 Defendant sent a letter to Plaintiff confirming the LET program and instructing him to report at the training center in McDonough, GA by 6:00pm on August 3, 2003. (Id. p 151 and Ex. 3).   Also on July 23, 2003 Plaintiff sent an email to Defendant asserting that he would be on FMLA intermittent leave starting the first week of August and that he would not be able to attend the August LET (Id. Ex. 29).  Based on Plaintiff's July 23rd email, the Lake Division Office of Defendant submitted a new FMLA leave request on July 24, 2003 on Plaintiff's behalf.  Copies of the physical therapy prescription and the medical certification form were faxed in as well (Strickland Depo. p 66-68, 73-74).[1]  The medical certification form was forwarded to Defendant's Medical Department staff nurse for further evaluation (Id. p79, 81).  Strickland asserts that he called Plaintiff and requested permission to speak to his doctor which Plaintiff denied (Id. at p109-111).  Plaintiff, however, assets that this is not true (DaLuca Aff. ¶19-22).

On July 28, 2003 Defendant sent Plaintiff a letter denying the requested FMLA leave based upon the certification provided by Dr. Nayak (Strickland Depo. Ex. 23).

---

[1]This was the first time that the medical certification form was submitted to Paul Strickland, Defendant's Family Medical Leave Coordinator.

Specifically, the letter stated, "The medical certification form provided by your physician states that you are not incapacitated.  Based upon the information provided this does not qualify as a serious medical illness.  In addition, the certification form indicates the condition began in January and was expected to last 4-6 months."  Also, on July 28th, Plaintiff scheduled his physical therapy appointments (Id. at 161).  After learning that his FMLA request was denied, Plaintiff did not cancel the scheduled physical therapy appointments (Id. at 167).  However, on the evening of July 29th, Plaintiff did request clarification from Strickland, via email, as to what additional information would be necessary and asserting that he would be able to obtain such additional information (Strickland Depo. Ex. 7).  Strickland did not respond to this email as he only worked a portion of the day on July 30th and then was off the rest of that week.  (Id. at 126).

On July 30, 2003 Defendant called Plaintiff to confirm his attendance at LET.  Plaintiff expressed concern about his ability to drive to Georgia.  Defendant responded by giving Plaintiff the rest of the week off with pay to make the trip to Georgia (DaLuca Depo. p 157-159).  Despite the additional time off of work, Plaintiff waited until August 3 to begin his journey to Georgia (Id. at 163).  Plaintiff drove for approximately two and a half hours before stopping because of back pain.  Plaintiff called his girlfriend who, along with her son, came and picked up Plaintiff (Id.).[2]  Plaintiff called Defendant to notify them of his failure to reach Georgia at approximately 6:00pm on August 3, several hours after he arrived back home. (Id. at 165-166).  Plaintiff was immediately

---

[2]Although Plaintiff was unable to drive to Georgia, he did make a trip, by car, from Batavia, Ohio to Connecticut on a spur of the moment weekend trip whereby he rode in a car 10 hours each way (LaDuca Depo. p 21-22, Begley Depo. p 12-13).

suspended, with benefits but without pay, for not following instructions (Id.).  Plaintiff admits that he was never seen by a doctor after aborting his drive to Georgia (Id. at 123, 167).

On August 7, 2003 Plaintiff was notified that a formal investigative hearing was scheduled for August 13 to determine why he failed to appear for LET (Talley Aff. ¶11).  Plaintiff requested that this hearing be rescheduled (LaDuca Depo. Ex. 37).  The hearing was reset for September 4, 2003 at Plaintiff's request.  On September 2, 2003 Plaintiff again requested that the hearing be rescheduled to October 22 or 29 (Id. at Ex. 40).  Plaintiff's request was not honored and the hearing was held on September 4, 2003.

It is the denial of the July 2003 FMLA request that is the subject of this litigation.

**B.    ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).   A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587.  Determination that a fact is genuine can only occur when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v.*

*Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

The Sixth Circuit recognizes "two distinct theories of recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising under 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2003). Entitlement/interference claims are based on "prescriptive" rights, which establish "'entitlements' to employees and 'set floors for employer conduct,'" while retaliation claims are based on "proscriptive" rights, which "prohibit disparate employer conduct with regard to employees taking leave." *Taylor v. The Union Institute*, 30 Fed. Appx. 443, 452 (6th Cir. 2002) (unpublished), *quoting, Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998). In addition, 29 U.S.C. § 2615(b)(1), makes it unlawful for an employer to discharge or discriminate against any individual who files a charge under or related to the statute. Although Plaintiff alleges both forms theories of recovery in his complaint, he abandons the retaliation claims in his memorandum in opposition to summary judgment by failing to address the issue. Thus, the Court will only address the entitlement/interference claim.

The Family and Medical Leave Act, 29 U.S.C. §2611 *et seq.* (FMLA), "entitles qualifying employees to up to 12 weeks of unpaid leave each year if, among other things, the employee has a 'serious health condition that makes the employee unable to perform the functions of the positions of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005), quoting 29 U.S.C. §2612(a)(1)(D). The FMLA also

provides for "intermittent" leave, which allows an employee leave to attend appointments with a health provider for necessary treatment of a serious health condition. 29 U.S.C. § 2612; *see also* 29 C.F.R. 825.117(defining requirements for intermittent leave). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Employers who violate § 2615 are "liable to any eligible employee affected" for damages and appropriate equitable relief. 29 U.S.C. § 2617(a)(1). *See also* Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

To succeed on his FMLA entitlement claim, Plaintiff must demonstrate that: (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Walton v. Ford Motor Co.*, 424 F.3d at 485 *citing Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The first two prongs of the test are not in dispute. Thus, the Court will first address whether or not Plaintiff was entitled to leave under the FMLA.

There are four qualify events that entitles an eligible employee to FMLA leave: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter; (B) Because of the placement of a son or daughter with the employee for adoption or foster care; (C) In order to care for the spouse, or a son,

8

daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a

serious health condition; or (D) Because of a serious health condition that makes the

employee unable to perform the functions of the position of such employee.  See 29

U.S.C. § 2612(1)(A-D).  The only applicable event to this matter is (D) "because of a

serious health condition."

The Federal Code of Regulations specifically addresses what is considered to be

a serious health condition under the FMLA.  The relevant sections are provided herein:

(a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

***
(2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e. , inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g. , physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

***
(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious

9

health condition is one which:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (e.g. , asthma, diabetes, epilepsy, etc.).

(iv) A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

(v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

29 CFR 825.114.

The Defendant argues that Plaintiff's injury does not qualify as a serious medical condition under (a)(2)(i) above.  Defendant argues that Plaintiff was not incapacitated for three consecutive calendar days because he attended a previously scheduled doctor's appointment on Friday, January 24, 2003 and because Dr. Le found Plaintiff qualified to work with no restrictions.  Plaintiff argues that he was, in fact, incapacitated

for at least three consecutive calendar days. The Court thus finds a genuine issue of fact exists.

Neither party addresses the definition as set forth in (a)(2)(iii). Furthermore, although the Defendant lists (a)(2)(iv) above in its motion for summary judgment as a relevant section of the statute, Defendant does not argue that Plaintiff does not fit under this category. Plaintiff also does not argue that this section is applicable to him. As such the Court will not address either (iii) or (iv) above.

The final situation, (a)(2)(v) above, states, in essence, that any absence necessary to receive multiple treatments for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis) constitutes a serious medical condition. The Senate Report comments that "back conditions" may qualify as a serious health condition if they "require extensive therapy or surgical procedures." *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1322-1323 (10th Cir. 2005) *citing* S. Rep. No. 103-3, at 29. Defendant argues that Plaintiff has not had restorative surgery and has not presented any evidence that he would likely had suffered a period of incapacity of more than three calendar days in the absence of treatment. Although Plaintiff does not specifically address this issue, the Court finds that since the medical certification submitted by Plaintiff does state that Plaintiff was prescribed Physical Therapy that there is a genuine issue of material fact as to whether at the time of the July request for FMLA leave that Plaintiff would likely have suffered from a period of incapacity of more than three consecutive calendar days without the physical therapy.

11

The Court must also examine whether Plaintiff fulfilled his duties when requesting leave. The statute, 29 U.S.C. §2612, clearly sets forth the duties of an employee when requesting FMLA leave. It states:

> In any case in which the necessity for leave under subparagraph (C) or (D) of subsection (a)(1) [because of a serious heath condition] is foreseeable based on planned medical treatment, the employee--
>
> (A) shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider of the employee ... ; and
>
> (B) shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(2)(A) and (B). Defendant argues that Plaintiff failed to make a reasonable effort to schedule his physical therapy so as not to disrupt their operations by not requesting his leave until July 23rd even though he received his prescription for therapy on June 23rd. Furthermore, Defendant argues that it has a need for its conductors to attend LET and that it needed to have a conductor from the Dayton District, that within which Plaintiff was employed. Plaintiff counters that Defendant had never told Plaintiff that the timing was disruptive and that Plaintiff had provided enough notice for Defendant to send another employee to LET in Plaintiff's place. The Court finds that this is a genuine issue of material fact.

Defendant also argues that Plaintiff failed to provide the requisite notice of his intent to take leave. Plaintiff counters that Defendant never informed Plaintiff of this requirement and that Plaintiff informed the Defendant as soon as practical. However, since Defendant can not provide any evidence that Plaintiff was, in fact, notified that his

May request for FMLA was denied (*See* Doc. 32, p 15 n6), a reasonable jury could determine that Plaintiff had requested leave more than 30 days prior to the date he expected his leave to begin.  Again, the Court finds that this is a genuine issue of material fact.

Finally, Defendant argues that Plaintiff has failed to show he was harmed by the denial of his FLMA request.  Defendant argues that it was Plaintiff's own actions, by failing to show up for LET and not appearing at the subsequent disciplinary action, that led to his termination.  Plaintiff counters that he was unable to attend LET because he was physically unable to get to Georgia for the training and that had his FLMA request been approved then his absence from LET would have been excused.  The Court finds a material issue of fact in dispute.

Plaintiff also argues that Defendant should have been required to allow Plaintiff to cure any deficiencies in the medical certification form.  *See* 29 C.F.R. §825.305(b). Defendant counters that the form was complete in their view and that the statute does not require a cure period for a completed certification, only for an incomplete certification.  The statutory requirements set forth that the medical certification contain the dates on which such treatment is expected to be given and the duration of such treatment and a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule.  *See* 29 U.S.C. § 2613 (b)(5) and (6).  The Court finds that a reasonable jury could find that the medical certification form submitted by Plaintiff was incomplete and thus, that Plaintiff should have been allowed to supplement the medical certification form to cure any deficiencies.

13

**C.**     **Conclusion**

Based on the foregoing, Defendants' Motions for Summary Judgment is

GRANTED as to Counts Two and Three and DENIED as to Count One.

**IT IS SO ORDERED.**


    *s/Michael R. Barrett*                 
Michael R. Barrett, Judge
United States District Court